# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Penelope Helenski,               :
               Appellant      :
                              :
                              :
            v.                :    No. 973 C.D. 2018
                              :    Submitted:  April 9, 2019
Upper Merion Township      :
Zoning Hearing Board        :
                              :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge (P.)
                HONORABLE MICHAEL H. WOJCIK, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER              FILED: May 2, 2019

Penelope Helenski (Landowner) appeals from the June 7, 2018 Order of the Court of Common Pleas of Montgomery County (common pleas), which affirmed the Notice of Decision of the Upper Merion Township (Township) Zoning Hearing Board (ZHB), mailed October 19, 2017, denying Landowner's appeal of a Notice of Violation dated September 28, 2015, that she was using her property in violation of Section 165-59 of the Township Zoning Ordinance of 1942, as amended (Township Code). Landowner argues that she satisfied her burden of proof establishing her entitlement to a variance by estoppel so that the use of her property, zoned residential, for the storage of vehicles and equipment was not in violation of the Township Code. Landowner further argues that her application for a variance by

estoppel should have been deemed approved because the ZHB did not issue a timely written decision in accordance with Section 908(9) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10908(9).[1] For the reasons that follow, we disagree and affirm.

## I. Factual Background

### A. Notice of Violation

Landowner is the owner of property (the Property) located in the Township, which is improved with a single-family detached dwelling and garage. The Property is located in the R-3 Residential District of the Township. The Property is deeply recessed from the street, the rear of the Property contains "heavy vegetation," and a neighboring townhouse community installed a privacy fence and planted trees adjacent to the Property. (ZHB Decision, November 16, 2017, Finding of Fact (FOF) ¶¶ 2, 4 (ZHB Decision II).) On September 16, 2015, following complaints from neighbors about the Property and issuance of a permit to construct a roof on the garage at the Property, the Township's Chief Building Official and Zoning Officer (Zoning Officer) inspected the Property. On September 28, 2015, Zoning Officer issued a Notice of Violation to Landowner, alleging that the Property was in violation of Section 165-59 of the Township Code regarding use regulations in that the Property was "being used as a storage yard for construction vehicles, construction equipment, miscellaneous materials, trailers and unregistered vehicles." (Supplemental Reproduced Record (S.R.R.) at 145b.) The Notice of

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(9). Section 908(9) of the MPC provides, in relevant part, that "[t]he board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer." 53 P.S. § 10908(9).

2

Violation advised Landowner that she had to bring the Property into compliance within 30 days by removing all vehicles and equipment that did not comply with the Township's Code on use regulations, including the removal of "construction trailers and vehicles, storage and stockpiling of construction materials and equipment." (*Id.*) The Notice of Violation stated that the Property was not to have the "outside appearance of a storage yard/business use." (*Id.*) Landowner appealed the Notice of Violation to the ZHB and a hearing was held.

### B.     First ZHB Hearing

At the hearing, Zoning Officer testified that during his inspection of the Property he observed "an abundance of material, equipment," and "vehicles surrounding the outside of the garage," such as a "dump truck, pickup trucks, trailers, backhoe buckets," and "construction equipment." (*Id.* at 25b-26b.) Photographs Zoning Officer and another inspector took on January 13, 2016, of the Property and the equipment and vehicles on it were entered into evidence. (*Id.* at 27b-31b; Photographs, *id.* at 195b-206b.)

Landowner's son (Son) testified that he lived at the property for 25 years beginning in 1974. Son testified that his father (Father), who is now deceased, collected trucks and trailers at the Property as part of the commercial truck equipment repairs and support of mechanical contractors that he did to earn a living. There were commercial vehicles stored on the Property, Son testified, "[e]very day[,] [s]even days a week." (S.R.R. at 106b.) Father continued to use the Property in this fashion up until his death in 2004. Although, according to Son, following Father's death, the Property was no longer being used for a commercial business, the vehicles and equipment, which Son inherited, continued to remain on the Property. Son

3

testified that 30 days after January 13, 2016, the day when Zoning Officer photographed the Property, he had removed only pieces of metal roofing and plastic barrels.

During the course of Son's testimony, Township Solicitor (Solicitor) precluded Landowner from presenting any evidence that she had acquired a variance by estoppel.

### C.  The ZHB's First Decision, Landowner's Appeal to Common Pleas, and Remand to the ZHB

By letter mailed on May 19, 2016, one day after the hearing in front of the ZHB concluded, Solicitor provided notice to Landowner's Counsel that the ZHB had voted to deny Landowner's appeal from the Notice of Violation. The letter indicated that an opinion with findings of facts, conclusions of law, and reasons would follow, and that the 30-day time period within which Landowner had to appeal began to run "on the date of entry (mailing) of this notice of decision" (Notice of Decision). (Reproduced Record (R.R) at 390a.)

On June 16, 2016, Landowner filed an appeal with common pleas from the Notice of Decision.

On July 26, 2016, the ZHB mailed an Opinion and Order with findings of fact and conclusions of law explaining its reasons for denying Landowner's appeal (ZHB's First Decision).

On February 13, 2017, common pleas vacated the Notice of Decision and remanded the matter to the ZHB, ordering it to hold an evidentiary hearing so that Landowner could present the testimony of an expert planner and Son on the Township's alleged active acquiescence in defense against the Notice of Violation

and for the ZHB to determine whether Landowner had met her burden of establishing a variance by estoppel.

### D.     The Remand Hearings before the ZHB[2]

At the remand hearings, Landowner presented the testimony of her expert Land Planner and Son and had a number of documents entered into evidence.

Land Planner testified that he had reviewed the Township's file for the Property, which contained 5 permits for the Property:  a June 13, 1973 permit to construct a garage as an accessory to a proposed dwelling; a July 26, 1974 permit for the construction of a single-family dwelling; a July 26, 1974 use and occupancy permit application for the single-family dwelling; a January 2, 1979 permit application to enclose the existing foundation for the garage area adjoining the existing garage; and a June 6, 2003 use and occupancy permit and associated application for a sunroom.  Land Planner also reviewed aerial photographs of the Property taken by the Delaware Valley Regional Planning Commission that depicted the Property in five-year intervals beginning in 1965 and ending in 2010.  Land Planner testified that in reviewing these photographs, they showed that in 1965, the Property was "vacant and wooded," and that in 1975 the Property had been cleared and the single-family dwelling and garage were under construction.  (R.R. at 165a, 172a.)  While, in the 1975 photograph, and continuing to the last photograph in 2010, Land Planner could identify other items around the Property, he could not specifically identify the nature of those items.  Based on Land Planner's review of the Township file and the photographs, he concluded that the Property was being used for more than just residential purposes.  Land Planner testified that it was his

---

[2] Hearings were held over three dates, while oral argument was held on a fourth date.

opinion, based on his experience, that the Property may have been inspected as part of the permitting process. However, Land Planner acknowledged on cross-examination that he did not know whether, in fact, the Property had been inspected when the permits were issued.

During cross-examination of Land Planner, he was shown a January 25, 1974 letter (1974 Letter) from William Keil, Building Official for the Township, to Father advising him that the permit to construct a garage "did not entitle [him] to make a junk yard or storage area for abandoned vehicles." (*Id.* at 196a, 475a.) Keil advised Father that he was in violation of the Township Code that regulated the storage of abandoned and junked vehicles and, therefore, in order to avoid legal action, he should remove all abandoned vehicles and parts from the Property within 30 days of the letter. (*Id.* at 475a.)

Son, claiming to be a co-owner of the Property, testified that during the course of the construction of the garage, the Township inspected it. Specifically, "**[e]very time** we had to have an open call for an inspection, I remember it being correctly done." (*Id.* at 219a (emphasis added).) The purpose of the garage, Son testified, was for Father to make a living as a mechanic, and Father "most certainly" intended to use the garage for that purpose. (*Id.*) "[F]rom day one," Son testified, Father stored items, such as a commercial truck, dump truck, and trailers, on the Property. (*Id.* at 220a.) Once the initial construction of the garage was completed, Father started constructing the house. Son testified that he recalled that during the construction of the home the Township conducted inspections because Son "was present," as Father was at work. (*Id.* at 222a, 225a.) When the 1979 permit was issued to enclose part of the garage, Son testified, he again recalled Township officials were on the Property inspecting the garage because it involved "masonry

6

construction." (*Id.* at 230a-31a.) At that time, Son testified, Father continued "to collect things and/or scrap them out" on the Property. (*Id.* at 231a.) In 2003, when the sunroom was constructed, which was done by Better Livings Homes, the Township, Son testified, would have been required to inspect the Property. Again, Son testified, Father continued to collect vehicles and equipment and store them on the Property. On cross-examination, Son acknowledged that for the garage and house inspections, while "they were conducted," he was "present for [only] some of them." (*Id.* at 255a.) Son could not recall the dates when he was present.

After the conclusion of the presentation of evidence, at oral argument on the appeal, Landowner's Counsel, when asked by Solicitor what proof there was in the record as to the money Landowner would have to expend to undo the "presumably lawfully permitted improvements," Counsel answered that there was "no specific testimony that says what the dollar figure is." (*Id.* at 300a-01a.) Counsel added that he was relying on what Zoning Officer stated Landowner would have to do in order to have the Property in compliance with the Township Code, which "implie[d] a substantial amount of money for a woman who lives in the house by herself." (*Id.* at 301a.)

### E.    The ZHB's Second Decision

By letter dated October 19, 2017, following the conclusion of the hearings before the ZHB on October 4, 2017, Solicitor informed Landowner's Counsel that the ZHB had voted to deny Landowner's appeal. (*Id.* at 518a.) Solicitor noted that the ZHB would subsequently issue findings of facts, conclusions of law, and reasons for its decision.

7

In the ZHB's Second Decision, mailed on November 16, 2017, the ZHB again denied Landowner's appeal. The ZHB concluded that Landowner had failed to establish that she acquired a variance by estoppel. (ZHB Decision II, Conclusion of Law (COL) ¶ 8.) The ZHB noted that in order to acquire a variance by estoppel, Landowner had to establish the following:

1. A long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use. However, a mere showing that a municipality has failed to enforce the law for a long period of time is insufficient in itself to support the grant of a variance.

2. Whether the landowner acted in good faith and relied innocently upon the validity of the use throughout the proceedings. But in assessing whether a landowner's reliance upon municipal inaction is reasonable, a landowner is duty bound to check the property's zoning status before purchase.

3. Whether the landowner has made substantial expenditures in reliance upon his belief that his use was permitted.

4. Whether the denial of the variance would impose an unnecessary hardship on the applicant, such as the cost to demolish an existing building.

(ZHB Decision II at 19-20 (citing *Mucy v. Fallowfield Twp. Zoning Hearing Bd. of Washington Cty.*, 609 A.2d 591, 592 (Pa. Cmwlth. 1992)).) The ZHB concluded that Landowner failed to establish any of the elements of a variance by estoppel.

First, the ZHB found, Landowner failed to demonstrate that the Township knew or should have known of her illegal use of the Property or that the Township actively acquiesced in her illegal use of the Property. (ZHB Decision II at 21.) The evidence demonstrated that Father or contractors performing work on the Property

8

consistently represented that the Property was being used for residential purposes, i.e., "a single-family detached home, with an accessory garage." (*Id.* at 21-22.) The ZHB noted that the Property was "a deep property, accessed from [the] [s]treet," and that the dwelling blocked the view of the rear of the Property where the illegal use was occurring, while heavy vegetation in the rear and a privacy fence and trees to the side further blocked view of Landowner's illegal use. (*Id.* at 22.) Land Planner, the ZHB found, admitted that he had no knowledge of whether an inspection would have been required for any of the permits that were issued, nor whether, in fact, any inspection occurred. (*Id.*) As for Son, the ZHB found that his testimony that inspections had occurred was "self-serving, inconsistent, and unsubstantiated." (*Id.*) The ZHB highlighted that while initially Son testified that inspections had occurred, "he contradicted himself throughout his testimony and was unable to recall specifics of the inspections." (*Id.*) In particular, on cross-examination, the ZHB found, Son "contradicted his [earlier] testimony" when he acknowledged that he was not present for every inspection. (FOF ¶ 18e.) Moreover, the ZHB noted, Son never testified who at the Township performed inspections of the Property. (ZHB Decision II at 23.) In any case, even if Son had identified the Township officials who had inspected the Property, "mere knowledge by a few individual officials of an impermissible use is insufficient to grant a variance by estoppel" and "knowledge by a few individual officials cannot be imputed to the [T]ownship." (*Id.* at 22 (citing *Mucy*, 609 A.2d at 593).)

Second, the ZHB found that Landowner did not establish that she acted in good faith. (*Id.* at 23.) Landowner, the ZHB found, knew that the Property was zoned only for residential use. In fact, the 1974 Letter was sent to Father informing him that his storage of vehicles on the Property was illegal. (*Id.*) Nevertheless,

9

"[S]on's testimony established that this was unimportant to Landowner." (*Id.*) Moreover, again noting that the illegal use of the Property was not visible from the street, the ZHB found that "Landowner hid the illegal use of the Property from the Township." (*Id.*)

Third, the ZHB found that Landowner did not make any expenditures, let alone ones that were substantial, in reliance upon her belief that her illegal use of the Property was permitted. The expenditures on the Property, the ZHB noted, including the permits that were issued, all related to the residential use of the Property. (*Id.* at 24.) In addition, Landowner admitted, through her attorney, that she had presented no evidence that she or Father expended a substantial sum of money in reliance on their belief that their illegal use of the Property was permitted. (*Id.*)

Fourth, Landowner failed to show that the denial of a variance by estoppel would impose an unnecessary hardship. The ZHB noted that in order to bring the Property into compliance with the Township Code, Landowner would not have to demolish any structures. All she needed to do was cease her illegal use of the Property as a storage yard for vehicles and equipment. (*Id.*)

Given the foregoing, the ZHB determined that Landowner had not met her burden of proof showing her entitlement to a variance by estoppel. (COL ¶ 8.) Therefore, the ZHB concluded, Zoning Officer properly cited Landowner for using the Property as a storage yard in violation of the Township Code, and the ZHB denied Landowner's appeal. (*Id.* ¶¶ 4-7.)

### F. Appeal to Common Pleas

Landowner appealed to common pleas, arguing that she had met her burden of proof establishing her entitlement to a variance by estoppel. In addition,

10

Landowner argued her application for a variance by estoppel should be deemed approved because the ZHB did not issue its first decision with written findings of fact until July 26, 2016, which was 68 days after the last hearing on May 18, 2016, in violation of Section 908(9) of the MPC, which requires the ZHB to "render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer." 53 P.S. § 10908(9).

Common pleas denied Landowner's appeal and affirmed the ZHB's Second Decision. Mirroring much of the ZHB's analysis of Landowner's claim to a variance by estoppel, common pleas determined that there was substantial evidence to support the ZHB's Second Decision denying Landowner's application for a variance by estoppel, and that the ZHB did not commit an error of law or abuse its discretion. (Common Pleas Opinion at 6.) As for the timeliness of the ZHB's First Decision, common pleas held that the Notice of Decision the ZHB issued on May 19, 2016, one day after the hearing concluded on May 18, 2016, satisfied the requirements of Section 908(9) of the MPC. (*Id.* at 3-4.)

## II.    Appeal to this Court

On appeal, Landowner raises two issues for our consideration: first, that she established her entitlement to a variance by estoppel; and second, that the ZHB's First Decision was not timely issued in accordance with Section 908(9) of the MPC.

11

### A. Variance By Estoppel

#### 1. Arguments of the Parties

Landowner argues that she met her burden of proof on each of the elements of variance by estoppel. First, she showed that because the Township issued a variety of permits for the Property and, as a result, would have been required to inspect the Property at a time when it was being used as a storage yard for vehicles and equipment, the Township knew of Landowner's illegal use of the Property. Second, Landowner asserts that Son "testified that he relied in good faith that the uses being conducted on the Property were valid and legal." (Landowner's Brief (Br.) at 27.) Landowner claims that the illegal use of the Property was not hidden from the Township but open. Third, Landowner contends that she expended substantial sums of money in improving the garage and home in reliance upon her belief that the use of the Property was legal. Fourth and finally, Landowner claims that to enforce the Township Code now would create an enormous hardship because "the requirement to now dismantle and remove the structures, vehicles[,] and material from the Property will be a large financial burden." (*Id.* at 28.)

The ZHB and the Township (collectively, the Township) argue that this Court should affirm common pleas' Order affirming the ZHB's denial of the request for a variance by estoppel for the reasons the ZHB found, as Landowner failed to meet any of the elements necessary for granting a variance by estoppel.

#### 2. Discussion

We begin by noting "that variance by estoppel is an unusual remedy under the law and is granted only in the most extraordinary of circumstances." *Skarvelis v. Zoning Hearing Bd. of Borough of Dormont*, 679 A.2d 278, 281 (Pa. Cmwlth. 1996).

12

In order to be entitled to a variance by estoppel, Landowner had to establish, by "clear, precise and unequivocal evidence," *Pietropaolo v. Zoning Hearing Board of Lower Merion Township*, 979 A.2d 969, 980 (Pa. Cmwlth. 2009), the following elements:

1. A long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use. However, a mere showing that a municipality has failed to enforce the law for a long period of time is insufficient in itself to support the grant of a variance.

2. Whether the landowner acted in good faith and relied innocently upon the validity of the use throughout the proceedings. But in assessing whether a landowner's reliance upon municipal inaction is reasonable, a landowner is duty bound to check the property's zoning status before purchase.

3. Whether the landowner has made substantial expenditures in reliance upon his belief that his use was permitted.

4. Whether the denial of the variance would impose an unnecessary hardship on the applicant, such as the cost to demolish an existing building.

*Mucy*, 609 A.2d at 529. Since the parties did not present any additional evidence before common pleas, "our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law." *Pietropaolo*, 979 A.2d at 976. In conducting our review, we "may not substitute [our] interpretation of the evidence for that of the ZHB. It is the function of a ZHB to weigh the evidence before it." *Id.* (citations omitted). It is the ZHB that "is the sole judge of the credibility of witnesses and the weight afforded their testimony." *Id.* Provided there is substantial evidence

13

in the record to support the ZHB's findings, "we are bound by the ZHB's findings that result from resolutions of credibility and conflicting evidence." *Id.*

Applying these principles here, Landowner failed to establish by clear, precise, and unequivocal evidence that the Township knew or should have known of her illegal use of the Property and actively acquiesced in the illegal use. Landowner's theory was that the Township knew of her illegal use of the Property because the Township would have been required to inspect the Property in connection with the permits it issued to her. The difficulty for Landowner, however, is that the ZHB concluded that Landowner failed to carry her burden showing that these inspections did occur, which conclusion turned on the ZHB's assessment of Son's testimony. The ZHB discredited Son's testimony that the Township inspected the Property when the permits were issued because he contradicted himself, stating that "[e]very time" an inspection was done, he was present and it was done correctly, but then stated that he was not present for all of the inspections. (R.R. at 219a, 255a.) Since the ZHB's determination discrediting Son on whether the Property was inspected is supported by substantial evidence, we have no basis to disturb it. Similarly, Landowner fares no better in relying on Land Planner's testimony since he did not know, in fact, whether the Property was inspected and his opinion that it may have been inspected was based only on his past experience as a land planner and zoning officer. Moreover, as the ZHB noted, even if Landowner had been able to establish that some Township officials knew of her illegal use of the Property, "mere knowledge by a few individual officials of an impermissible use is insufficient to grant a variance by estoppel" and "knowledge by a few individual officials cannot be imputed to the [T]ownship." *Mucy*, 609 A.2d at 593. In any case, even when it came to the Township's attention that Father was illegally using the Property to store

14

vehicles, the Township issued the 1974 Letter directing Father to cease doing so. Thus, when the Township was aware that Landowner was illegally using the Property, it did not actively acquiesce to that use. At best, all Landowner showed was that the Township failed to enforce the law from 1974 until 2015, but that is insufficient to show active acquiescence. Rather, the Township had to do "more than passively stand by," it had to "have committed some affirmative act, such as granting a building permit, which would reasonably lead a property owner to conclude that the proposed use was sanctioned under the law." *Skarvelis*, 679 A.2d at 281; *see Knake v. Zoning Hearing Bd. of Dormont*, 459 A.2d 1331, 1333 (Pa. Cmwlth. 1983) (property owner acquired variance by estoppel where the municipality did not act for 44 years, the municipality had actual knowledge of the illegal use, and the zoning officer approved a permit application despite knowing of the illegal use). For these reasons, Landowner did not satisfy her burden of proof on the first element of variance by estoppel.

Landowner also failed to establish that she acted in good faith upon her belief that her use of the Property was legal. The 1974 Letter put Landowner and Father on notice that use of the Property as a storage yard was not permitted. *Spargo v. Zoning Hearing Bd. of the Municipality of Bethel Park*, 563 A.2d 213, 217-18 (Pa. Cmwlth 1989) (court questioned the good faith of property owner, a dentist, who was permitted to conduct his practice as a secondary use to the residential use of the property, but expanded that secondary use to where it was no longer secondary by hiring more assistants in violation of the zoning law and making $20,000 in renovations to the property). Further, as the ZHB noted, while all of the permits Landowner obtained were for residential uses, Son testified that Father "most certainly" intended to use the Property to work on vehicles. (R.R. at 219a.) Thus,

15

Landowner did not act in good faith, but intended to use the Property for an illegal use in defiance of the uses the Township permitted on the Property. Landowner argues that a property owner would not continue to apply for permits knowing that the property was being used for an illegal purpose, especially when an application for a permit would result in the Township inspecting the property. Landowner's argument, however, is sheer speculation, particularly given Son's testimony that Father intended to use the Property for an illegal use in defiance of the uses the Township permitted on the Property. Therefore, the evidence showed that Landowner did not believe that the use of the Property as a storage yard was legal or that she acted in good faith. As such, Landowner did not establish the second element of variance by estoppel.

Landowner next failed to establish that she made substantial expenditures in reliance upon her belief that the use of the Property as a storage yard was permitted. Landowner argues that she would have to expend a substantial sum of money to "dismantle and remove the structures, vehicles and material from the Property." (Landowner's Br. at 28.) Landowner, however, does not specify what structures would have to be removed. The only structures on the Property are a single-family dwelling and garage, both of which are permitted on the Property as they are for residential uses. The vehicles and material would have to be removed, as the Zoning Officer advised Landowner, in order to bring the Property into compliance with the Township Code. As Landowner conceded during argument before the ZHB, Landowner did not provide any evidence on the dollar figure to remove the vehicles and material on the Property, and could only argue that it would be "a substantial amount of money" given what the Zoning Officer advised Landowner. (R.R. at 301a.) The arguments of Landowner's Counsel, of course, are not evidence. *Good*

16

*Tire Serv. v. Workers' Comp. Appeal Bd. (Wolfe)*, 978 A.2d 1043, 1048 n.3 (Pa. Cmwlth. 2009). Therefore, there was no evidence, let alone evidence that was "clear, precise and unequivocal," showing that Landowner made substantial expenditures in reliance upon her belief that the use of the Property as a storage yard was permitted. *Pietropaolo*, 979 A.2d at 980.

Finally, Landowner did not establish that denial of a variance by estoppel would impose an unnecessary hardship on her. In order to establish unnecessary hardship, Landowner was required to "show more than a mere economic or personal hardship." *Id.* Landowner had to "prove that the hardship is unique to the [P]roperty and that the zoning restriction sought to be overcome renders the [P]roperty practically valueless." *Id.* (citation and emphasis omitted). In *Hafner v. Zoning Hearing Board of Allen Township*, 974 A.2d 1204, 1208-09 (Pa. Cmwlth. 2009), the property owner had been using his property to operate two businesses, in violation of the local zoning law, and as a residence. We held that the property owner did not prove unnecessary hardship because while the "denial of the variance may result in some economic loss, . . . [the property owner's] personal residence is on the property and he felt he could use the garages for storage." *Id.* at 1213. The same is true here. Landowner has been and continues to reside at the Property in the single-family dwelling and can use the garage for storage. *Id.*; *see also Peitropaolo*, 979 A.2d at 980 (concluding that unnecessary hardship was not shown since the property owner and his wife reside on the property and can use the garage for storage). Denial of a variance by estoppel does not render the Property practically valueless; rather, Landowner can continue to use the Property for residential purposes.

For all these reasons, we conclude that common pleas properly affirmed the ZHB as Landowner failed to establish her entitlement to a variance by estoppel.

17

### B.     Timeliness of the ZHB's First Decision

####     1.     Arguments of the Parties

Landowner next argues that the ZHB's First Decision was not timely issued in violation of Section 908(9) of the MPC because it was not mailed until "almost 68 days after the final hearing."[3] (Landowner's Br. at 29-30.) Contrary to common pleas' conclusion, Landowner argues, the ZHB did not satisfy Section 908(9) by issuing a Notice of Decision one day after the hearing and then its First Decision with findings of fact and conclusions of law 69 days later. The ZHB's untimely issuance of its First Decision prejudiced Landowner, she contends, because she filed an appeal from the Notice of Decision. Indeed, Landowner highlights, Solicitor incorrectly indicated in the Notice of Decision that Landowner had to appeal from it. "The intent" of Solicitor's statement, Landowner claims, "was to prejudice [her] and force an untimely and inappropriate appeal." (*Id.* at 30.) Landowner asserts that she was not given the opportunity to supplement her appeal following the ZHB's First Decision, and the ZHB's First Decision was "not part of the record or should not have been considered as part of the record" before common pleas. (*Id.*) Because the ZHB's First Decision was untimely, Landowner argues that common pleas should have deemed her application for a variance by estoppel approved or made its own findings of fact.

The Township argues that the ZHB's Notice of Decision, issued one day after the last hearing, prior to remand, on May 18, 2016, was sufficient to meet its obligation under Section 908(9) of the MPC. Where, as here, Township contends, a notice of decision is timely issued, the municipality need not issue a decision with findings of facts, conclusions of law, and reasons within 45 days of the last hearing.

---

[3] The final hearing was on May 18, 2016, and the ZHB's First Decision was mailed on July 26, 2016, which is a period of 69 days.

18

Further, contrary to Landowner's argument, the Township asserts that the ZHB's First Decision was in front of common pleas. Indeed, Landowner attached the ZHB's First Decision to the brief she submitted to common pleas. Consequently, the Township claims that Landowner did not suffer any prejudice when the ZHB issued its First Decision more than 45 days after the last hearing.

### 2. Discussion

Section 908(9) of the MPC provides, in relevant part, that "[t]he board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer." 53 P.S. § 10908(9).

We addressed the 45-day requirement in Section 908(9) in *Bishop Nursing Home, Inc. v. Zoning Hearing Board of Middletown Township*, 638 A.2d 383, 385 (Pa. Cmwlth. 1994), where the ZHB denied the property owner's application for a variance, notifying the property owner on May 23, 1990, of its denial. The property owner filed its appeal to the trial court on June 22, 1990. On July 2, 1990, the property owner received the ZHB's final decision, which contained its findings of fact and conclusions of law. On appeal to this Court, the property owner argued, based on Section 908(9) of the MPC, that the trial court should have struck the ZHB's findings of fact because they did not accompany the ZHB's notice of decision and were filed after the property owner appealed to the trial court. We rejected the property owner's argument. While we reiterated that we did "not condone the late filing of findings of fact," we did not remand for new findings because the ZHB's "findings were clearly part of the record before the trial court and it would have been absurd for the court to remand the matter to the [ZHB] for findings of fact and

19

conclusions of law." *Id.* at 386. Further, we noted, the property owner "was not prejudiced by any 'late filing' of the [ZHB's] decision as [the property owner] had already appealed to the trial court and was permitted to supplement its land use appeal in order to specifically challenge the [ZHB's] findings before the trial court." *Id.*

We again addressed a ZHB's issuance of a decision with findings of fact, conclusions of law, and reasons beyond the 45-day deadline contained in Section 908(9) in *Mullen v. Zoning Hearing Board of Collingdale Borough*, 691 A.2d 998 (Pa. Cmwlth. 1997). There, following testimony before the ZHB on a variance request heard on July 19, 1995, the Board voted, during a public work session on August 9, 1995, to deny the variance request. By letter dated August 11, 1995, the ZHB's solicitor informed the property owner's attorney that the variance request had been denied, that a written order containing findings of fact would follow, and that the time period for the property owner to appeal would commence from the date the August 11, 1995 letter was mailed. *Id.* at 999. The property owner filed an appeal with the trial court on September 8, 1995, and, on October 6, 1995, the ZHB filed its written decision containing findings of fact. *Id.* The trial court reversed the ZHB's decision, concluding that a deemed approval had resulted because the ZHB did not issue a formal decision until more than 45 days after the July 19, 1995 hearing. On appeal to this Court, we reversed the trial court. After reviewing our case law, we concluded that Section 908(9) of the MPC required the ZHB, "[w]ithin forty-five days of the last hearing . . . [to] make a decision on the matter and that decision must be communicated to the applicant in writing." *Id.* at 1001. However, we held, it was "not necessary that the decision be accompanied by the usual written appurtenances of an opinion." *Id.* Thus, in *Mullen*, we concluded that the letter the

20

ZHB's solicitor issued, which was within 45 days of the last hearing, was sufficient to satisfy the requirements of Section 908(9) of the MPC and, therefore, "there was no deemed approval by the" ZHB. *Id.* at 1001; *see Romesburg v. Fayette Cty. Zoning Hearing Bd.*, 727 A.2d 150, 152 (Pa. Cmwlth. 1999) ("precedent clearly indicates that a decision, not supported by written facts and findings, is still valid; the decision is not deemed to be in favor of the applicant solely because the findings of fact and conclusions of law are late or absent").

Applying here our longstanding precedent of *Bishop* and *Mullen*, we must conclude that there was no deemed approval of Landowner's request for a variance by estoppel. Much as in *Mullen*, the ZHB, through Solicitor, issued a timely decision denying Landowner's request for a variance by estoppel. The Notice of Decision was issued one day after the final hearing. This was sufficient to satisfy the time requirements of Section 908(9) of the MPC. Moreover, contrary to Landowner's contention, she was not prejudiced by the issuance of the ZHB's First Decision 69 days after the last hearing. As the Township notes, the ZHB's First Decision was appended to the brief Landowner submitted to common pleas. In addition, ultimately, the result of Landowner's appeal of the Notice of Decision was to remand the matter to the ZHB so that it could take additional evidence on Landowner's request for a variance by estoppel. Therefore, as in *Mullen*, "[S]olicitor's letter was sufficient to memorialize the decision made by the [ZHB], satisfy the timeliness requirements[,] and notify the [Landowner] so that [s]he could take an appeal." *Mullen*, 691 A.2d at 1001. Accordingly, there was no deemed approval of Landowner's request for a variance by estoppel.

21

## III.    Conclusion

For the foregoing reasons, we conclude that common pleas properly affirmed the ZHB's Notice of Decision denying Landowner's request for a variance by estoppel because Landowner failed to establish her entitlement to such relief, and the ZHB did not issue an untimely decision in violation of Section 908(9) of the MPC.

 

 

 

                                                _____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Penelope Helenski,                           :
                    Appellant                :
                                             :
                                             :
          v.                                 :      No. 973 C.D. 2018
                                             :
Upper Merion Township                        :
Zoning Hearing Board                         :
                                             :

# **O R D E R**

    **NOW**, May 2, 2019, the June 7, 2018 Order of the Court of Common Pleas of Montgomery County is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge